HENRY HUGHES V. THE STATE.

No. 20549. Delivered November 1, 1939.

The opinion states the case.

*Wm. McMurrey,* of Cold Springs, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, Judge.

The offense is theft of a hog; the punishment, confinement in the penitentiary for two years.

Sam McCombs, the injured party, testified that on the 9th of September, 1938, he went into an open field where he had some hogs ranging and found that appellant had killed one of the hogs. We quote from his testimony: "I heard the gun when it went off, and I made in that direction, and when I got across the branch, I could see this defendant hopping around, and I got within about fifteen steps of him before he saw me, and he was trying to sack the hog, he had a big sack, and when he saw me, he dropped the sack and I told him not to be scared that I was not going to kill him, and I said, 'What are you doing?' and he said, 'I killed the hog through mistake.

I killed the wrong hog.' And I looked at the head of the hog and saw the mark, crop and under bit in the left ear and split in the right ear, and this defendant said, 'I have ten dollars at home that I will bring you tonight if you will take it,' and he talked and pleaded with me and I said, 'Henry, you come to town tomorrow and we will discuss this thing,' and I told him that I would advise him to leave the hog where it was lying. I was on my horse at this time and this defendant took the gap down for me to ride through, and he said, 'Mr. Sam, if you will let me pay you a good price for the hog I will guarantee that you will never catch me in this place again.' At this time he told me that he would be in town the next day as I requested him to do, but he never did come into town the next day."

The injured party testified further that he knew that the appellant was in the woods on the day the hog was killed as he had heard his dog barking. He said: "I knew this defendant was in the woods on the day I have testified about and I was setting for the gentleman." Again, he testified that on the following morning he went with three men to the place where the hog had been left and found that it had been taken away. He and his companions then went to a barbecue pit where appellant was barbecuing a hog but the butchered animal that was being barbecued belonged to the appellant. A search of the appellant's home also failed to disclose the injured party's hog. Touching appellant's knowledge of McComb's hogs, McCombs said: "This defendant had lived in that country a good many years. He moved out once but he came back. I have occasionally asked this defendant if any of my hogs were in the field and sometimes he would tell me they were. I had a black 'bar' at one time. I asked him about it and he said he had seen it on Byrd's Creek but I never did find the hog. But this defendant never bothered them until one year ago when I started missing them." McCombs owned about 150 head of hogs which ranged over a wide area.

Several witnesses testified to having gone to the place where the injured party stated that his hog had been killed. However, they saw no tracks, notwithstanding appellant had a peg leg. They stated that the ground was hard. Again, they found no blood. There was also testimony from appellant's witnesses that appellant had about 150 hogs ranging in the vicinity of the field in which the injured party's hog had been killed.

Appellant did not testify.

We are unable to agree with appellant's contention that the evidence is insufficient. It is true the State proved that appellant explained to the injured party that he killed the hog through a mistake. However, when we look to the circumstances of the entire transaction it is observed that appellant knew the hogs of the injured party; that he was attempting to place the dead hog in a sack when the injured party appeared on the scene; that notwithstanding he stated that he killed the hog through mistake he was preparing to carry it away; that at the time of appellant's statement the injured party had not charged him with killing his hog; that the hog was plainly marked and that it was killed about sunset when the mark should have been observed by the appellant; that appellant offered to pay for the hog and agreed to meet the injured party in town for the purpose of discussing the matter with him; that he failed to comply with his agreement; that notwithstanding appellant and the injured party were the only persons who knew where the hog had been left, it was carried away during the night by someone. Viewing these circumstances, and taking into consideration that it was the province of the jury to pass upon the credibility of the witnesses and the weight to be given to their testimony, and that they accepted the version of the injured party, we would not feel warranted in holding that the testimony disclosed by the record was not sufficient to sustain the conclusion of the jury that appellant's explanation when found in possession of the slaughtered hog was false.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.